# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### MINNEAPOLIS DIVISION

| | |
|---|---|
| **CARRIE COBB, JAMICA CRAWFORD, and LAVETTE JONES,** individually, and on behalf of others similarly situated, | Case No.: 22-cv-2364 <br><br> Hon.: |
| Plaintiffs, | |
| vs. | **COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND** |
| **MEDICA SERVICES COMPANY LLC**, a Minnesota Limited Liability Company, | |
| Defendant. | |

---

Plaintiffs, CARRIE COBB, JAMICA CRAWFORD, and LAVETTE JONES (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant MEDICA SERVICES COMPANY, LLC ("Defendant"), and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. §§ 177.21-177.35, the Minnesota Payment of Wages Act ("MPWA"), Minn. Stat. § 181, *et seq.*, and for common law claims of breach of contract or (in the alternative) unjust enrichment.

1

2.      Defendant offers individual and family, employer-provided, Medicaid, and Medicare health insurance plans in several states, including Minnesota, Iowa, Kansas, Missouri, Nebraska, North Dakota, South Dakota, and Wisconsin.

3.      Defendant employs remote hourly employees throughout the country to provide the people and business insured through Defendant ("Members") with customer service. These hourly employees, hereinafter collectively referred to as Customer Service Representatives (or "CSRs"), have a variety of internal job titles. However, the material aspects of their employment, duties, and the wage and hour violations complained of herein are the same for all CSRs.

4.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

5.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all

hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

7.     Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

8.     Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

9.     This policy results in CSRs not being paid for all time worked, including overtime.

10.     While performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

11.     The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

12.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

13.     Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

14.    Plaintiffs seek to represent in this action all current and former remote CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

15.    Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

16.    Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

17.    Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Classes, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## **JURISDICTION**

18.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

19.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

4

20.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

21.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

22.      Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

23.     Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

24.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

25.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

26.     This Court has personal jurisdiction over Defendant because it conducts business within the state of Minnesota, has its principal place of business and headquarters in Minnesota, is registered with the Minnesota Secretary of State and employs individuals within the state of Minnesota.

27.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Minnesota, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

29.     Plaintiff CARRIE COBB ("Plaintiff Cobb") is an Oklahoma resident who worked for Defendant as a remote CSR in Oklahoma within the last three years.

30.     Defendant paid Plaintiff Cobb for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $19.57 per hour.

31.     Plaintiff Cobb signed a consent to join this collective action lawsuit. **Exhibit 1**, Cobb Consent to Join.

32.     Plaintiff JAMICA CRAWFORD ("Plaintiff Crawford") is a Missouri resident who worked for Defendant as a remote CSR in Missouri within the last three years.

33.     Defendant paid Plaintiff Crawford for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $21.00 per hour.

6

34.     Plaintiff Crawford signed a consent to join this collective action lawsuit. **Exhibit 2**, Crawford Consent to Join.

35.     Plaintiff LAVETTE JONES ("Plaintiff Jones") is a Minnesota resident who worked for Defendant as a remote CSR in Minnesota within the last three years.

36.     Defendant paid Plaintiff Jones for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $23.00 per hour.

37.     Plaintiff Jones signed a consent to join this collective action lawsuit. **Exhibit 3**, Jones Consent to Join.

38.     Defendant is a Minnesota Corporation (File Number 1191278400028) with its principal place of business located at 401 Carlson Parkway, Minnetonka, Minnesota 55305.

## GENERAL ALLEGATIONS

39.      Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices within the last three (3) years.

40.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

41.     Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

42.     These schedules result in CSRs routinely working overtime on a weekly basis.

43.     Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

44.     At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

45.     Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

46.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

47.     These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

48.     Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

49.     Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can log into Defendant's phone system and begin taking and making phone calls.

50.     CSRs, including Plaintiffs, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift.

51.     Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSR's shift, and critically, before they clock in, through their performance metrics and schedule adherence policies.

52.     More specifically, being clocked in but unavailable to take calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

53.     Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

54.     This performance metric necessarily requires that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

55.     Additionally, Defendant subjected CSRs to discipline if they were unable to complete a call within nine (9) minutes of receiving the call.

56.     In order to be fully prepared to promptly and efficiently handle calls, CSRs were required to have loaded and logged into all of their computer programs at the moment they clock in to begin receiving calls.

57.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

58.     Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

59.     Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

60.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than twenty-five (25) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

61.     This time could easily be recorded, accounted for and paid, but for Defendant chose not to credit such time as time worked.

## A.     Pre-Shift Off-the-Clock Work

62.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

63.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

64.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging fifteen (15) to twenty (20) minutes per day, and the tasks can take longer (upwards of thirty (30) minutes) if CSRs experience technical problems with the computer, software, and/or applications.

65.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to perform a number of compensable work tasks including turning on and logging into their computers; connecting to Defendant's virtual private network (VPN); and receiving a code on their cell phones and passing a facial recognition test in order to connect to the VPN.

66.     Once connected to the VPN, CSRs are required to load and log-into a number of essential work programs including: Citrix, Essette, Adobe, Health Rules, Avaya, CT Suites, Navi RX, Cotiviti, Okta, Finesse, Mediavance, Outlook, Word, and several web-based applications.

67.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

68.     Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

69.     Instead, Defendant maintains attendance policies that require them to be call-ready at the moment they clock-in.

70.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than fifteen (15) minutes per day of work performed in connection with the above pre-shift activities.

### B.     Meal-Period Off-the-Clock Work

71.     Defendant provides their CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

72.     In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

73.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

74.     Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

75.   In fact, several of the programs utilized by CSRs automatically log them out if they are idle for more than a few minutes (at lunch), which requires them to undergo some or all the bootup process outlined herein.

76.   On most days, CSRs spend approximately five (5) to ten (10) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

77.   Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C.   Post-Shift Off-the-Clock Work

78.    Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

79.   The shutdown and logout process, along with post-shift claims processing, requires another five (5) to ten (10) minutes of off the clock work per shift.

80.   Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

81.   Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

82.     The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

83.     Additionally, CSRs are often required to perform additional post-shift off-the-clock work by dealing with the "Claims Department" in transferring and processing issues with Members' claims.

### D.     Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

84.     An example of specific workweeks where Defendant failed to pay Plaintiff Crawford all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 07/24/2021 to 08/06/2021

- Plaintiff Crawford was paid at a rate of $19.00 per hour for the forty hours of each work week and $28.50 per hour for 1.92 overtime hours Defendant credited her with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of twenty-five (25) to forty (40) minutes per shift, at five shifts per week, Plaintiff Kenan should have been paid an additional one hundred twenty five (125) to two hundred (200) minutes at her overtime rate of $28.50 during the overtime workweek.

85.     Plaintiffs Cobb and Jones similarly routinely worked over forty hours or more hours per week.

86.     The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

E.       **Defendant Benefitted From the Uncompensated Off-the-Clock Work**

87.      At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

88.      At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

89.      At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

90.      Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

91.      At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

92.      At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

93.      Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment they clocked in for their shifts.

94.      At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

95.     Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

96.     Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

97.     In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

98.     Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

99.     Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

100.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

101.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

102.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

103.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

104.    Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

105.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

   b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

106.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

107.    Defendant's unlawful conduct has been widespread, repeated and consistent.

17

108.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

109.    The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

110.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

111.    The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

112.    Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

113.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

114.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

115.    Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

116.    The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

### RULE 23 MINNESOTA CLASS ACTION ALLEGATIONS

117.    Plaintiff Kenan brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in Minnesota at any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 Minnesota Class"). Plaintiff Jones reserves the right to amend the putative class definition if necessary.

118.    The members of the Rule 23 Minnesota Class are so numerous that joinder of all Rule 23 Minnesota Class members in this case would be impractical.

119.    Plaintiff Jones reasonably estimates that there are hundreds of Rule 23 Minnesota Class members. Rule 23 Minnesota Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

120.    There is a well-defined community of interest among Rule 23 Minnesota Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Minnesota Class.

121.     These common legal and factual questions include, but are not limited to, the following:

> a.    Whether the pre-, mid-, and post-shift time Rule 23 Minnesota Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

b.     Whether Defendant breached its agreement with the Plaintiffs and the Rule 23 Minnesota Class to pay for all hours worked at the agreed upon rate;

c.     Whether the Rule 23 Minnesota Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof;

d.     Whether Defendant's pay practices violated the MPWA and the MFLSA;

e.     Whether Defendant violated the MPWA and the MFLSA by failing to make, keep, and preserve true and accurate payroll records;

f.     Whether Defendant should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the MPWA and MFLSA; and

g.     Whether Defendant's violations of the MPWA and the MFLSA were willful.

122.    Plaintiff Jones's claims are typical of those of the Rule 23 Minnesota Class in that she and all other Rule 23 Minnesota Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

123.    Plaintiff Jones's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Minnesota Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Minnesota Class members.

124.    Plaintiff Jones will fully and adequately protect the interests of the Rule 23 Minnesota Class and she has retained counsel who are qualified and experienced in the prosecution of Minnesota wage and hour class actions.

125.     Neither Plaintiff Jones nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Minnesota Class.

126.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Minnesota Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

127.     Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

128.     This case will be manageable as a Rule 23 Class action. Plaintiff Jones and her counsel know of no unusual difficulties in this case and Defendant and their corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

129.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

130.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Minnesota Class and declaratory relief is appropriate in this case with respect to the Rule 23 Minnesota Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

131.     By its express terms, the MFLSA entitles an aggrieved employee to stand in the shoes of the Commissioner of Labor and Industry to enforce certain remedial provisions of the MFLSA. *See* Minn. Stat. § 177.27; *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608 (Minn. 2008). The chief remedy afforded the Commissioner is injunctive relief and issuance of civil penalties for willful violations of the Act.

132.     Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Minnesota Class— acting in their capacity to enforce the Commissioner's remedies—seeks an order from this Court enjoining Defendant from its continued violation of the MFLSA and for an award of civil penalties.

133.     Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Minnesota Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

134.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on

their own behalf and on behalf of:

> *All similarly situated current and former hourly CSRs who worked for Defendant in the United States, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to

amend this definition as necessary.

135.    The members of the Rule 23 Nationwide Class are so numerous that joinder

of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiffs

reasonably estimate there are hundreds of Rule 23 Nationwide Class members.  Rule 23

Nationwide Class members should be easy to identify from Defendant's computer systems

and electronic payroll and personnel records.

136.    There is a well-defined community of interest among Rule 23 Nationwide

members and common questions of law and fact predominate in this action over any

questions affecting individual members of the Rule 23 Nationwide Class. These common

legal and factual questions, include, but are not limited to, the following:

      a.    Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

      b.    Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

    c.      Whether the time that the Rule 23 Nationwide Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

    d.      Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

137.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

138.    Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

139.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions.

140.    Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

141.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

142.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

143.    This case will be manageable as a Rule 23 Class action.

144.    Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

145.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

146.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.
### FAILURE TO PAY OVERTIME WAGES

147.    Plaintiffs re-allege and incorporates all previous paragraphs herein.

148.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

149.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

150.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

151.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

152.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

153.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than twenty five (25) to forty (40) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

154.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

155.    Defendant's violations of the FLSA were knowing and willful.

156.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

157.   Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

158.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
### (Rule 23 Minnesota Class Action)
### Violations of the Minnesota Payment of Wages Act, Minn. Stat. §§ 181, *et seq.*;
### Failure to Timely Pay Wages

159.   Plaintiff Jones re-alleges and incorporates all previous paragraphs herein.

160.   At all times relevant to the action, Defendant was an employer within the meaning of the MPWA. Minn Stat. §181.171(4).

161.   Minn. Stat. § 181.101 entitles employees to compensation for every hour worked in a workweek and requires every employer to pay all wages earned by an employee at least once every 31 days on a regular payday. *See* Minn. Stat. § 181, et seq.; Minnesota Rules, part 5200.0120, subpart 1.

162.   Defendant violated the MPWA by regularly and repeatedly failing to compensate Plaintiff Jones and the Minnesota Class for the time spent on the off-the-clock preliminary activities described in this Complaint.

163.   Defendant's actions were willful and not the result of mistake or inadvertence. *See* Minn. Stat. § 541.07(5).

27

164.    As a result, Plaintiff Jones and the Minnesota Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff Jones and the Minnesota Class are entitled to recover unpaid wages owed, plus costs and attorney fees, and other appropriate relief under the MPWA at an amount to be proven at trial.

**COUNT III**
**(Rule 23 Minnesota Class Action)**
**Violations of the Minnesota Fair Labor Standards Act, Minn. Stat. § 117.3; Failure to Keep Accurate Records**

165.    Plaintiff Jones re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

166.    Defendant is required to make and keep a record of hours worked each day and each workweek by its employees. Minn. Stat. § 177.30.

167.    Defendant violated the MFLSA's record keeping requirement by failing to record each hour Plaintiff Jones and the Minnesota Class worked.

168.    Specifically, Defendant's policies on compensable time prevented Plaintiff Jones and the Minnesota Class from recording work performed during pre-shift time and post-shift time, thereby failing to keep records of all hours Plaintiff Jones and the Minnesota Class worked.

169.    As a direct and proximate result of Defendant's conducts, Plaintiff Jones and the Minnesota Class have suffered damages.

**COUNT IV**
**(Rule 23 Minnesota Class Action)**
**Violations of the Minnesota Payment of Wages Act, Minn. Stat. §§ 181, *et seq*.;**
**Failure to Timely Pay Wages**

170.   Plaintiff Jones re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

171.   Minn. Stat. § 177.27, subd. 8, entitles an employee to bring an action on behalf of the Commissioner of Labor and Industry. *See generally* Minn. Stat. § 177.27, subd. 8; *see also Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608 (Minn. 2008).

172.   The Commissioner's remedies include, but are not limited to:

   a.   Enforcement of the MFLSA's record keeping provisions (Minn. Stat. § 177.30);

   b.   Enforcement of the MFLSA in general (injunctive and declaratory relief, Minn. Stat. §177.30, sub. 4);

   c.   Enforcement of the MPWA's requirement employers pay wages for each hour worked (Minn. Stat. § 181.101); and

   d.   Enforcement of the MPWA's prompt pay laws (Minn. Stat. § 181 et seq.).

173.   Defendant violated each and every one of the provisions set forth in Minn. Stat. § 177.30 subparts (a) through (d) by failing to keep accurate time records, failing to pay for all time worked, and requiring its employees to work off-the-clock.

174.   Pursuant to Minn. Stat. § 177.27 sub. 7 an employer who violates any section of the Act, "[s]hall be subject to a civil penalty of up to $1,000 *for each violation for each employee*."

175. As noted above, Defendant is a large, sophisticated employer who has intentionally and systematically violated the wage and hour laws of the state of Minnesota for its own gain.

176. Minn. Stat. § 177.27 sub. 7 does not require the Commissioner to proceed, seek, or obtain certification to impose the civil penalty for an employer's violations of the MFLSA or MPWA.

177. As a direct result of Defendant's violation of the MFLSA and MPWA, Plaintiff Jones is entitled to seek a civil penalty and injunctive relief on the Commissioner's behalf for each and every violation of the MFLSA and MPWA Defendant's committed at an amount to be proven at trial.

## COUNT V
### (Rule 23 Nationwide Class Action)
### Breach of Contract

178. Plaintiffs Cobb and Crawford reallege and incorporate all previous paragraphs herein.

179. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

180. Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Nationwide Class members.

181.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of approximately $18.00 to $24.00 per hour.

182.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

183.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

184.    To the extent there is no state law remedy available, Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case because Defendant paid them more than the federally mandated minimum wage of $7.25 per hour in the weeks they worked less than 40 hours per week.

185.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs Cobb and Crawford and every other member of the Rule 23 Nationwide Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

## COUNT VI
### (Rule 23 Nationwide Class Action)
### Unjust Enrichment

186.    Plaintiffs Cobb and Crawford re-allege and incorporate all previous paragraphs herein.

187.    This Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

188.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

189.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

190.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

191.    Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

192.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

193.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

194.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

195.    Plaintiffs Cobb and Crawford and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

196.    As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs Cobb and Crawford and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, on behalf of the Rule 23 Minnesota Class, and on behalf of the Rule 23 Nationwide Class requests judgment as follows:

    a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I), and permitting prompt notice to issue to all similarly-situated employees;

b.    Certifying this action as a class action (for the Rule 23 Minnesota Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Jones's state law claims under the MFLSA and MPWA (Counts II-IV);

c.    Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts V-VI);

d.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the Rule 23 Minnesota Class members, and the Rule 23 Nationwide Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e.    Designating Plaintiffs as the representatives of the FLSA collective action and undersigned counsel as Class counsel for the same;

f.    Designating Plaintiff Jones as the representative of the Rule 23 Minnesota Class, and undersigned counsel as Class counsel for the same;

g.    Designating Plaintiff Cobb and Crawford as the representatives of the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

h.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

i.    Declaring Defendant's violation of the FLSA was willful and/or in reckless disregard;

j.    Declaring Defendant violated the MFLSA and MPWA as cited herein;

k.    Declaring Defendant violated its obligations under the MFLSA and MPWA, Minn. Stat. § 177.27, et seq. and 181;

l.    Declaring Defendant's violation of the MFLSA and MPWA was willful;

m.    Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class, the Rule 23 Minnesota Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

34

n.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

o.      Awarding the issuance of civil penalties as discussed herein;

p.      Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

q.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 27, 2022              Respectfully Submitted,

**FIEBIGER LAW LLC**

By: _s/Rolf T. Fiebiger_____
**Rolf T. Fiebiger** (#0391138)
6800 France Ave. S., Ste. 190
Edina, MN 55435
phone (612) 888-6084
rolf@fiebigerlaw.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PHV Forthcoming*)
402 W Liberty Street
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 27777) (*PHV Forthcoming*)
8151 Peters Road, 4th Floor
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*PHV Forthcoming*)
126 Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiffs and the
Putative Collective/Class Members*