## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## MINNEAPOLIS DIVISION

**CARRIE COBB, JAMICA CRAWFORD, and LAVETTE JONES,** individually, and on behalf of others similarly situated,

          Plaintiffs,

vs.

**MEDICA SERVICES COMPANY LLC**, a Minnesota Limited Liability Company,

          Defendant.

Case No.: 0:22-CV-02364-JRT-DLM

Hon.: John R. Tunheim

Hon. Mag.: Douglas L. Micko

---

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is entered into by and between CARRIE COBB, JAMICA CRAWFORD, and LAVETTE JONES (the "Named Plaintiffs"), individually and on behalf of the putative collective of individuals that they seek to represent, and MEDICA SERVICES COMPANY LLC, a Minnesota limited liability company ("Defendant") (together with Named Plaintiffs, the "Parties").

## RECITALS

WHEREAS, the Named Plaintiffs filed suit against Defendant in the United States District Court for the District of Minnesota, Case No. 0:22-CV-02364-JRT-DLM, alleging that Defendant owes them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; straight time wages under the Minnesota Payment of Wages Act ("MPWA"), Minn. Stat. §§ 181, et seq.; straight time wages pursuant to common law breach of contract or (in the alternative) common law unjust enrichment claims; and for various penalties under the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. §§117.3 *et. seq.* and the MPWA ("the Lawsuit"), and asserting their claims on behalf of a putative FLSA collective, a national class and Minnesota class under Federal Rule of Civil Procedure 23; and

WHEREAS, on April 12, 2023 and May 16, 2023, the Parties participated in mediation of this matter in person and via Zoom video conference, which were conducted by experienced and nationally renowned class and collective action mediator, Michael Russell, Esq. (the "Mediator"), in which a resolution was reached between the Parties resulting in this Agreement; and

WHEREAS, Defendant denies all of the allegations made by the Named Plaintiffs in the Lawsuit, denies that it failed to pay, or that it otherwise owes the Named Plaintiffs or any members of the putative class or collective, any overtime or straight time compensation, and further denies

that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted (or that could have been asserted) in the Lawsuit. Nonetheless, without admitting or conceding any liability, wrongdoing, or damages whatsoever, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit; and

WHEREAS, Plaintiffs' Counsel thoroughly analyzed and evaluated the merits of the claims made against Defendant in the Lawsuit, obtained and reviewed over a thousand pages of documents relating to Defendant's compensation policies and job descriptions, and analyzed log-in, log-out, timekeeping and payroll data, and retained an expert forensic accountant to analyze the data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk that a class or collective would not be certified or would eventually be decertified, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiff and Settlement Collective Members (as hereinafter defined).

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Wage and Hour Claims (as hereinafter defined) between the Participating Plaintiffs (as hereinafter defined) and Defendant and all claims between the Named Plaintiffs and Defendant, including but not limited to all claims asserted in the Lawsuit; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Lawsuit on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "**Agreement**" means this Settlement Agreement and Release of Claims.

1.2 "**Approval Order**" means the Order to be entered by the Court approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Settlement Collective Members.

1.3 "**Customer Service Representatives**" includes all current and former hourly customer service representative employees of Defendant, regardless of title, employed between January 27, 2019 and May 16, 2023.

1.4 "**Claim Form**" means the form on pages 8-9 of the Notice in **Exhibit A**, which each Collective Member must complete in full and return, as set forth herein, in order to become a Participating Plaintiff and to recover a portion of the Collective Settlement Amount.

1.5 "**Collective Counsel**" or "Plaintiffs' Counsel" means Ash Law, PLLC, Morgan and

Morgan, P.A., Fiebiger Law, LLC, and Hooper Hathaway, P.C.

1.6   "**Collective Settlement Amount**" means $820,000.00, the amount of the Total Settlement Amount that will be available to the Settlement Collective Members. Any Settlement Collective Member who wishes to receive their share of the Collective Settlement Amount must submit a Claim Form.

1.7   "**Settlement Collective Members**" means any and all current and former Customer Service Representatives employed by Defendant in the United States between September 27, 2019 to May 16, 2023 (the "**Relevant Period**"). This is the group to whom Notice will be sent.

1.8   "**Court**" means the United States District Court for the District of Minnesota.

1.9   "**Defendant**" means Medica Services Company, LLC, a Minnesota limited liability company.

1.10   "**Defendant's Counsel**" means Dorsey & Whitney LLP.

1.11   "**Effective Date**" shall be the later of (a) the date the Court approves this Settlement Agreement and Release of Claims, or (b) the date the Court enters judgment dismissing the Lawsuit.

1.12   "**Employer Payroll Taxes**" means any and all taxes and withholdings that Defendant is required to make arising out of or based upon the payment of wages in the Lawsuit, including without limitation FICA, FUTA, SUTA and other federal or state tax obligations.

1.13   "**Lawsuit**" means the case of *Carrie Cobb, et al. v. Medica Services Company, LLC*, in the United States District Court for the District of Minnesota, Case No. 0:22-cv-02364-JRT-DLM.

1.14   "**Named Plaintiffs**" means Carrie Cobb, Jamica Crawford, and Lavette Jones.

1.15   "**Notice**" means the Court-approved Notice of Settlement of Collective Action Lawsuit, attached hereto as **Exhibit A**.

1.16   "**Participating Plaintiffs**" shall mean those Settlement Collective Members who timely return a completed Claim Form, and the Named Plaintiffs, who shall all be deemed to have submitted a valid claim, without the necessity of submitting a Claim Form.

1.17   "**Parties**" shall mean, collectively, Named Plaintiffs and Defendant.

1.18   "**Released Parties**" means Medica Services Company, LLC and all of its parents, divisions, affiliates (including but not limited to Dean Health Plan, Inc.),

subsidiaries, predecessors, successors, employee benefit plans and plan administrators, and insurers, and their respective directors, partners, shareholders, principals, officers, members, fiduciaries, trustees, employees, attorneys, and agents.

1.19    The "**Settlement Claims Administrator**," also referred to as "**Claims Administrator**" will be Rust Consulting, Inc.

1.20    **Total Settlement Amount**" means the total amount of One Million Two Hundred Seventy-Five Dollars and Zero Cents ($1,275,000.00), up to which Defendant has agreed to pay to fully resolve and settle the Lawsuit, including any and all claims for the separately negotiated attorneys' fees and costs, any and all amounts to be paid to or on behalf of Settlement Collective Members and the Named Plaintiffs, all Collective Representative Service Awards, all administrator's fees and costs, and all taxes, except that Defendant's Employer Payroll Taxes shall be paid by Defendant in addition to the Total Settlement Amount. Under no circumstances will Defendant be required to pay more than the combined gross total of One Million Two Hundred Seventy-Five Dollars and Zero Cents ($1,275,000.00), plus any applicable Employer Payroll Taxes

Defendant also agrees that it will pay the full cost of the mediations, pursuant to the mediation agreement reached as a result of the mediation held May 16, 2023.

## 2.    APPROVAL AND NOTICE

2.1    **Binding Agreement**: This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.

2.2    **Settlement Claims Administrator**: The Settlement Claims Administrator will be responsible for "scraping" the Collective Member mailing list (provided by Defendant as set forth herein) against the National Change of Address ("NCOA" or "NCOALink") data set maintained by the United States Postal Service ("USPS") prior to mailing out Notices to Settlement Collective Members; mailing of Notices and Claim Forms to Settlement Collective Members in accordance with the Court's Approval Order; responding to Collective Member inquiries; resolving disputes relating to Settlement Collective Members' settlement amounts; reporting on the state of the settlement to the Parties; calculating the Settlement Checks in accordance with the Court's Approval Order; calculating Settlement Collective Members' share of taxes, distributing Settlement Checks to Settlement Collective Members and withholding Settlement Collective Members' share of taxes; remitting such tax payments (i.e., withheld collective members' share of taxes) to the appropriate taxing authorities; providing Claim Forms to Defendant' Counsel and Collective Counsel; providing redacted Claim Forms to Collective Counsel suitable for filing; preparing a declaration regarding its due diligence in the claims administration process; providing counsel with any information related to the administration of the settlement upon request; and performing such other duties as the Parties may jointly direct or as are specified herein.

(A)    The Settlement Claims Administrator shall be paid from the Total Settlement Amount and the Parties agree that administration costs are not anticipated to exceed $30,000 and endeavored to select a Settlement Claims Administrator that anticipates that administration of the claims shall not exceed that amount.

(B)    The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement. The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices and Claim Forms to Settlement Collective Members, the claims administration process, the substance and status of disputes raised by Settlement Collective Members regarding the calculation of settlement awards, and distribution of the Settlement Checks.

(C)    In the event of a dispute regarding a Collective Member's Settlement Award, the Settlement Claims Administrator shall promptly report the nature of the dispute to Collective Counsel and Defendant's Counsel, who will confer in good faith with the Settlement Claims Administrator in an effort to resolve the dispute. In the event counsel are unable to reach agreement, the Settlement Claims Administrator shall decide the dispute, subject to the terms of this Agreement.

**2.3    Certification of a Settlement Collective.**  The parties are agreeing to certification of a collective for settlement purposes only.  This Agreement shall not constitute, in this or any other proceeding, an admission of any kind by Defendant, including without limitation, that certification of a class or collective action for trial or any other purpose is appropriate or proper or that Named Plaintiffs can establish any of the requisite elements for class, collective or representative treatment of any of the claims in the Lawsuit were Defendant to contest certification.

**2.4    Settlement Approval Motion**

(A)    Within 14 days of the date this Agreement has been signed by all Parties, Plaintiffs' Counsel will draft a Motion for Approval of Settlement ("Approval Motion") consistent with this Agreement, which Defendant agrees not to oppose. Plaintiffs' Counsel shall provide Defendant's Counsel a reasonable opportunity to review the Approval Motion before filing and shall not unreasonably refuse to consider edits proposed by Defendant's Counsel.  In connection with the unopposed Approval Motion, the Parties will submit to the Court a Notice of Settlement of Collective Action Lawsuit; a proposed distribution method for the individual settlement amounts for each Participating Plaintiff; and a proposed Approval Order.

(B)    In the Approval Motion, Named Plaintiffs will request that the Court: (1) certify a collective for settlement purposes only; (2) approve this Agreement as fair, adequate and reasonable in all respects; (3) dismiss the Lawsuit with prejudice; and (4) retain jurisdiction to enforce the agreement and order the clerk to keep the case open until 15 days after the final payments are due pursuant to the terms of this Agreement.

(C)     If the Court denies the Approval Motion, the Parties agree to jointly seek reconsideration of the ruling or attempt to renegotiate the settlement based on the Court's orders and seek Court approval of a renegotiated settlement. Only in the event that all reasonable effort has been exercised in an attempt to secure court approval of this Settlement or one reasonably close in terms will this Lawsuit resume as if no settlement had been attempted. Subject to the foregoing, if the settlement is not approved, this agreement will be void and the parties will be restored to their prior positions as if they had not entered into this Agreement. The parties further agree that this Agreement will not be admissible in this or any other proceeding as evidence that either (i) a class action should be certified, or that this matter may proceed as a representative action; or (ii) Defendant is liable to Named Plaintiffs or any Collective Member (or any other person), other than according to the terms of this Agreement.  In the event that the settlement is not approved or otherwise voided, Defendant retains the right to contest whether the Lawsuit should be maintained as a collective or class action and to contest the merits of the claims being asserted in the Lawsuit. This Agreement (including Exhibits) will not be used for any purpose in connection with the Lawsuit, any future litigation, or any other lawsuit, arbitration, administrative or other legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations herein will remain in effect.

**2.5     Notice to Settlement Collective Members**

(A)     Within fourteen (14) days of the Effective Date, Defendant will provide the Settlement Claims Administrator, in electronic form, the following information for all Settlement Collective Members: name, social security number and most current address from business records (the "Collective List"). Defendant agrees to re-run a list of current addresses from business records, but has no obligation to do additional searching for location of the Settlement Collective Members. The Settlement Claims Administrator will "scrape" the mailing list provided by Defendant against the United States Postal Service NCOA database prior to mailing out the Notice to Settlement Collective Members. The Settlement Administrator shall maintain the unredacted Collective List as confidential, and shall not share the data with any person or entity, including Plaintiffs' Counsel, except as Defendant may agree or as may be ordered by the Court.   However, the Settlement Administrator may upon request provide anonymized data to Plaintiffs' Counsel so that data can be reviewed for irregularities. While Plaintiffs' Counsel will not be provided with the full Collective List, they shall receive the identification and contact information of any Participating Plaintiffs.

(B)     Within seven (7) days of the receipt of the Collective List from Defendant, the Claims Administrator will mail to all Settlement Collective Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit, Claim Form and an addressed postage-paid return envelope. The Notice shall state that the Notice is authorized and approved by the Court, inform the Class Members of their eligibility to participate in the settlement

by signing and returning the enclosed consent form, clearly state the deadline by which the Settlement Collective Member must return the Claim Form to participate in the settlement, inform the Settlement Collective Member of the acceptable methods of transmitting the Claim Form, inform them of the general nature of the claims asserted in the Lawsuit, their rights as Settlement Collective Members (including without limitation the right to be free from retaliation), specify the scope of the claims they release by virtue of participating in the settlement (including a release of all FLSA and state law wage claims), state the legal effect of not participating in the settlement, advise them of their representation by Collective Counsel at no cost if they choose, and provide them instruction on how to contact Collective Counsel and/or the Claims Administrator if they have questions. The Claim Form shall be a form pursuant to which the Settlement Collective Member agrees to participate in this settlement, accept representation by Collective Counsel and releases the Released Claims as specified herein. The Claim Form shall also require the Settlement Collective Member to provide his or her name, date of signing, current address, email address and phone number and their social security number and which can be returned by methods set forth by the Claims Administrator (which shall include U.S. Mail, facsimile or email). The Claim Form shall advise the Settlement Collective Member that the contact information is for use by Collective Counsel, Defendant's Counsel, or the Claims Administrator only and will not be filed with the Court. Any Claim Form filed shall have such contact information redacted. Settlement Collective Members will only be bound by this settlement and will only be entitled to receive a share of the Collective Settlement Amount if they return their fully completed and signed Claim Form postmarked (for Claim Forms returned by mail) or time/date stamped (for Claim Forms returned by facsimile or email) within forty five (45) days from the mailing of the Notice to them ("Consent Deadline").

(C)     The Claims Administrator will take all reasonable steps to obtain the correct address of any Settlement Collective Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement. The Claims Administrator will notify Collective Counsel and Defendant's Counsel of any Notice sent to a Settlement Collective Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing as set forth in this Agreement. No reminder notice of any type shall be sent. There shall be no other attempts to contact Settlement Collective Members by the Claims Administrator or Collective Counsel. Within 7 days of the Consent Deadline the Settlement Claims Administrator shall provide Collective Counsel with a list of all Participating Plaintiffs and electronic copies of all timely received and completed Claim Forms.

## 2.5    Claim Forms and Settlement Checks

(A)     Named Plaintiffs and Settlement Collective Members who timely return a completed Claim Form shall be Participating Plaintiffs and will be issued a Settlement Check by the Settlement Claims Administrator in accordance

with the Approval Order.

(B)     The Settlement Checks will be mailed to Participating Plaintiffs by the Settlement Claims Administrator within five (5) days of the date that Defendant submits the portion of the Collective Settlement Amount that is necessary to fulfill the terms of this settlement as described herein.

(C)     The following release language shall be included by the Claims Administrator on the back of each Settlement Check:

*My signature or negotiation of this check constitutes a full, final and complete release by me of Medica Services Company, LLC and its parent subsidiary and affiliated entities, and their respective officers, directors and employees, for any and all unpaid wages, overtime and minimum wage type claims, and any associated penalties, interest, liquidated damages or attorneys' fees and costs, as well as any other claims for compensation pursuant to contract or agreement or otherwise, including those that were or could have been asserted or alleged on my behalf in the matter Carrie Cobb, et al. v. Medica Services Company, LLC, in the United States District Court for the District of Minnesota, Case No. 0:22-cv-02364-JRT-ECW up to and including, the Effective Date, as well as my acknowledgement that I accept this check as payment in full for all claims asserted or alleged on my behalf in that Lawsuit.*

## 3.    SETTLEMENT TERMS AND ADMINISTRATION

### 3.1    Settlement Amount

(A)     Defendant agrees to pay up to the Total Settlement Amount of One Million Two Hundred Seventy-Five Thousand Dollars and Zero Cents ($1,275,000.00), which shall be the maximum amount necessary pursuant to the terms of this Agreement to fully resolve and satisfy any claim for attorneys' fees and costs, any and all amounts to be paid to or on behalf of the Named Plaintiffs, payments to Participating Plaintiffs, payment to the Settlement Claims Administrator's for fees and costs, and any and all taxes other than Employer Payroll Taxes. Under no circumstances will Defendant be required to pay more than the gross total of One Million Two Hundred Seventy-Five Thousand Dollars and Zero Cents ($1,275,000.00), employer payroll taxes, and the costs of the mediation. The Total Settlement Amount will be divided into four separately negotiated categories. **Category 1**, in the total amount of $400,000.00, is the amount that, upon approval of the settlement by the Court, will be paid to counsel for Plaintiffs and represents payment of all attorneys' fees, **Category 2**, in the total amount of $43,000.00, represents litigation costs and claims administration costs, **Category 3**, in the total amount of $12,000.00, which will be paid in equal parts to Named Plaintiffs as Collective Representative Service Awards, and **Category 4**, in the approximate amount of $820,0000.00 consists of the **Collective Settlement Amount** from

which the potential Settlement Collective Members will be eligible to be paid their pro rata share pursuant to this Agreement, provided that they timely return an executed Claim Form.  Each of the above Categories was negotiated separate and apart from one another. Notwithstanding the foregoing, this settlement is contingent upon approval and certification by the Court, and in the event that the settlement is not approved, or in the event that the judgment otherwise does not become final, no payments shall be due or made by or on behalf of Defendant to anyone pursuant to this Agreement.

(B)     The formula utilized to calculate the individual Settlement Collective Members' potential settlement awards is set forth herein. The Claims Administrator will divide the Collective Settlement Amount by the total number of full or partial work weeks that all Settlement Collective Members were employed during the Relevant Period ("Per Work Week Amount"). The Claims Administrator will multiply the Per Work Week Amount by the total number of full or partial work weeks that each Settlement Collective Member was employed during the Relevant Period to arrive at an estimated "Individual Settlement Amount," for each Collective Member. Provided a Settlement Collective Member timely returns an executed claim form so as to become a Participating Plaintiff, such individual's Individual Settlement Amount will be paid as set forth in this Agreement and allocated as follows: 50% as wages; 50% as liquidated damages. The Claims Administrator will be responsible for issuing a form W-2 for the amount deemed wages and an IRS Form 1099 for the portions allocated to liquidated damages.  Defendant and the Released Parties, individually and collectively, (a) will have no responsibility or liability whatsoever for the calculation of any Individual Settlement Amount, and (b) will have no obligation to pay the Individual Settlement Amount for any Collective Member who does not timely return an executed Claim Form.

(C)     Within twenty-one (21) days after the Effective Date, Defendant will deliver to the Claims Administrator the attorney's fees and litigation costs.  If for any reason, the settlement is invalidated following Defendant's payment of the attorneys' fees and costs amount, Plaintiffs' counsel shall promptly return such payment.

(D)     Within twenty-one (21) days after the later of (1) the Effective Date, or (2) being notified in writing of the total gross amount owed for payment of Individual Settlement Amounts to Participating Plaintiffs, plus Collective Representative Service Awards, plus administration fees, Defendant will deliver to the Claims Administrator the total amount due to all Participating Plaintiffs for their Individual Settlement Payments. Fourteen (14) days thereafter, the Claims Administrator shall issue all Individual Settlement Payments and Collective Representative Service Awards.

(D)     Participating Plaintiffs will have 90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Settlement Collective Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(E)     Any unclaimed funds and the value of un-negotiated settlement checks to

Participating Plaintiffs that remain uncashed 90 days after the date of mailing shall belong to Defendant. A Participating Plaintiff's failure to cash their settlement check shall not affect the validity of their release of claims pursuant to this Agreement. The Settlement Claims Administrator shall void uncashed checks and distribute any such amounts to Defendant within twenty (20) days after the last date on which a Participating Plaintiff may cash their settlement checks.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs, Claims Administration Costs, and Collective Representative Service Awards**

(A)    The Parties have separately negotiated and agreed upon a reasonable fee to Collective Counsel (based on their lodestar and a small lodestar multiplier) in the amount of $400,000.00, plus litigation costs in the amount of up to $13,000.00. In the event litigation costs do not total $13,000.00, the balance will be transferred into the Collective Settlement Amount.

(B)    Notwithstanding Section 2.4(C), the outcome of any proceeding related to Collective Counsel's attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the approval of the underlying settlement, which was negotiated separately from the attorney fees and litigation costs.

(C)    In exchange for the General Release as defined below, Defendant agrees not to oppose or object to any application or motion by Plaintiffs for Collective Representative Service Awards in the amount of $4,000.00 each (total of $12,000.00) for the Named Plaintiffs' time, effort, and risk in brining and prosecuting this matter. The Collective Representative Service Awards shall be paid simultaneously with the Named Plaintiffs Individual Settlement Amounts. Any portion of the requested Collective Representative Service Award that is not awarded to the Named Plaintiffs shall be part of the Collective Settlement Amount and shall be distributed to Settlement Collective Members as provided in this Agreement. The Settlement Administrator shall issue an IRS Form 1099-MISC to Named Plaintiffs for their Collective Representative Service Awards. Named Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on their Collective Representative Service Awards. The Collective Representative Service Award shall be in addition to the Named Plaintiffs' Individual Settlement Amount as a Participating Plaintiff. In the event that the Court reduces or does not approve the requested Collective Representative Service Award, Plaintiff shall not have the right to revoke or renegotiate the Settlement, or file an appeal, and it will remain binding.

(D)    The Claims Administrator costs shall not to exceed $30,000.00. Any amount of the Claims Administrator costs that is not used will be added to the Collective Settlement Amount.

**3.3    Collective Settlement Amount and Allocation to Collective Members**. The allocation to Collective Members for Settlement Checks will be made from the Collective Settlement

Amount.

**3.4    Tax Characterization**

(A)    For tax purposes, the Collective Members' payments shall be treated as wages and liquidated damages as set forth in Section 3.1(B).

(B)    Payments treated as wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to the terms of this Agreement shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)    Named Plaintiffs, Participating Plaintiffs and Plaintiffs' Counsel acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(B)).  Named Plaintiffs, Participating Plaintiffs and Plaintiffs' Counsel will not seek any indemnification from Defendant or any of the Released Parties with respect thereto.  It is understood and agreed that Defendant makes no representations with respect to the tax consequences of any payment associated with the Settlement.

**4.    RELEASE**

**4.1    Release of Claims and Covenant Not to Sue**

By operation of the entry of the Approval of this Agreement, and except as to such rights or claims as may be created by this Agreement,

(A)    By signing and timely returning a completed Claim Form, a Participating Plaintiff shall fully, finally and forever release, remise and discharge the Released Parties from (1) any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted, under the FLSA, any state wage and hour law or any state wage payment law, including but not limited to all claims for unpaid regular, straight time or overtime wages, or claims for miscalculation of the regular rate, as well as all associated claims for liquidated damages, punitive damages, penalties, interest, attorneys' fees and costs, taxes, equitable or injunctive relief, or any other remedies, (2) all claims for breach of

contract or unjust enrichment or any other claim related to the payment of compensation, or (3) any other claims which could have been asserted in the Lawsuit for unpaid wages (together, the "Released Wage and Hour Claims"). The Released Wage and Hour Claims also includes all claims for derivative benefits (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) and all available remedies and relief of any kind or nature whatsoever related to such claims, relating to the Participating Plaintiff's employment as a Customer Service Representative with Defendant during the Relevant Period. Each Participating Plaintiff agrees not to sue or otherwise cause to be instituted any legal or administrative proceedings, to the fullest extent permitted by law, asserting any Released Claim.

(B)     In addition to the Released Claims, the Named Plaintiffs only will execute General Release of all claims existing as of the date this Agreement is signed. Without limiting the generality of the foregoing, by their signatures below, each of the Named Plaintiffs releases and discharges the Released Parties from all liability, to the fullest extent permitted by law, for any and all claims, actions, causes of action, promises, agreements, debts, liabilities, damages (including liquidated, consequential, or punitive damages), penalties, interest, assessments, or costs or expenses of any kind (including, but not limited to, attorneys' fees and litigation costs), whether known or unknown, suspected or unsuspected, fixed or contingent, under any theory of pleading or proof, arising out of any act or omission occurring before their respective execution of this Agreement (except any claims under federal and state law that may not be released as a matter of law), including, but not limited to: (a) any claims based on, arising out of, or related to their respective employment with, the termination of their respective employment with the Defendant, and/or any other actions, decisions, omissions, or events occurring through the date each Named Plaintiff executes this Agreement; (b) any claims for compensation of any kind, including without limitation, any and all salary or wages and/or amounts due under any contract, expenses, earned but unused vacation, commissions, or incentive or bonus compensation; (c) any claims arising from rights under any federal, state, and/or local constitution, statute, regulation, rule, ordinance, or law, including, but not limited to, those related to any form of retaliation, harassment, discrimination, hostile work environment, or whistleblower-protection laws on any basis, or any related cause of action; (d) any claim grounded in contract, tort, or equitable theories to the fullest extent permitted by law, including but not limited to personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, *quantum meruit* claims ; and/or (e) any other claims of any kind whatsoever, under any other theory, whether legal or equitable, including, but not limited to, any claims for any kind of damages, declaratory or injunctive relief of any kind, or legal fees.

  Each Named Plaintiff agrees not to sue or otherwise cause to be instituted any legal or administrative proceedings, to the fullest extent permitted by law, asserting any claim released under this paragraph.

(C)     Except as provided in this Agreement, and as detailed in the mediation agreement

resulting from the Parties' second mediation on May 16, 2023, Collective Counsel and the Named Plaintiffs, on behalf of the Collective Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Released Parties for attorneys' fees or costs associated with Collective Counsel's representation of the Collective Members. Collective Counsel further understands and agrees that Collective Counsel's fees and costs, will be the full, final and complete payment of all attorneys' fees and costs associated with Collective Counsel's representation in the Lawsuit. The release, acquittal and discharge set forth in this paragraph shall not apply to any attorneys' fees or costs incurred in relation to any efforts to enforce the terms of this Agreement.

**4.2** **Non-Admission of Liability:** Defendant denies that it violated the law in any manner asserted in, alleged in or related to the Lawsuit, or otherwise. Defendant maintains that at all times it has properly compensated Named Plaintiffs, Settlement Collective Members and all other non-exempt employees. Defendant further denies that this case is suitable for treatment as a class or collective action (except for the limited purposes of settlement), and otherwise denies any and all wrongdoing alleged by Named Plaintiffs or otherwise. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendant of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendant or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law. Defendant has agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will: (i) provide substantial benefits to Defendant's members, (ii) avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation, and (iii) put the claims in the Lawsuit finally to rest. Nothing in this agreement shall be deemed, construed or used as an admission of liability, culpability, negligence, wrongdoing or unlawful conduct of any kind or nature whatsoever by or on behalf of Defendant or the Released Parties, or as an admission that a class should be certified for any purpose other than settlement purposes.

**5.** **INTERPRETATION AND ENFORCEMENT**

**5.1** **Cooperation Between the Parties; Further Acts:** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to effectuate this Agreement, including during any appeals, and to obtain the Court's approval of this Agreement and all of its terms and to defend this Agreement and the settlement from any legal challenge. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. The Parties will fully cooperate with each other and with the Settlement Claims Administrator to accomplish, implement, and effectuate the terms of this

Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement.

5.2 **No Assignment:** Collective Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

5.3 **Entire Agreement:** With the exception of the mediation agreement reached May 16, 2023 (which provided for Defendant pay the full cost of the mediations), this Agreement constitutes the entire, complete and integrated agreement between the Parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. This Agreement may not be amended or modified except by a writing duly signed by the Parties or their duly authorized representatives.

5.4 **Binding Effect:** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff and all Participating Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees, attorneys, successors and assigns.

5.5 **Arms' Length Transaction; Materiality of Terms:** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated. Accordingly, this Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

5.6 **No Liens:** Plaintiffs and Plaintiffs' Counsel warrant and represent that there are no liens on this Agreement or the settlement contemplated herein.

5.7 **Captions:** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7 **Construction:** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8 **Blue Penciling/Severability:** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable with the exception

of the provisions of the Release contained herein, such finding shall not affect the validity of the remaining portions of this Agreement which will remain in full force and effect and will be construed and enforced to effect the purposes thereof to the fullest extent permitted by law.

**5.9    Governing Law:** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Minnesota, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10    Continuing Jurisdiction of the Court:** The parties will request that the Court retain jurisdiction over the interpretation, implementation, and enforcement of the terms of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby, including any and all orders and judgments entered in connection therewith.

**5.11    Waivers To Be in Writing**: No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    Return of Documents/Data:** Collective Counsel and Named Plaintiffs will destroy all documents produced by Defendant and/or Defendant's Counsel (whether formally or for purposes of mediation) and shall delete all electronic records thereof within thirty (30) days of the last day on which Participating Plaintiffs may cash their Settlement Checks, except as required by Collective Counsel's malpractice insurance and the Rules of Professional Conduct.

**5.13    When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.14    Public Statements**: Acknowledging that this Settlement reflects a voluntary and arms-length resolution of disputed claims, and that Medica denies any wrongdoing asserted in the litigation or otherwise, it is the intent of the parties for neither party to characterize this good-faith Settlement in a manner designed to disparage the other party. Therefore, to the fullest extent permitted by law, Named Plaintiffs and Plaintiffs' Counsel shall not mischaracterize the Settlement or disparage Medica in any public statement (whether written, electronic or oral, including but not limited to internet or social media

postings).  Plaintiffs' Counsel shall be permitted to promote the general terms of the settlement, but shall not use Medica's name (or their affiliates' names) in any promotional materials of the settlement. Nothing in this Agreement is intended to preclude Named Plaintiffs from exercising any right available under the National Labor Relations Act, but neither party to this Agreement may falsely represent the terms of this Agreement, or any fact related to the Litigation, to anyone.  Without limiting the generality of the foregoing, Named Plaintiffs and Plaintiffs' Counsel shall limit their response to any inquiry by any media representatives regarding the Litigation or the Settlement to stating that "the matter was resolved" or words to that effect.  Plaintiffs' Counsel shall be permitted to discuss the terms of the proposed settlement with Collective Members to the full extent necessary to satisfy their fiduciary obligations as proposed Collective Counsel.  It shall not be a violation of this provision for Plaintiffs' Counsel at any time to advise their clients in any fashion, and Plaintiffs' Counsel may disclose the settlement in any adequacy of counsel declarations/ related settlement court filings, so long as the disclosure is limited to information in the public record

**5.15**    **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

**5.16**    **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

**5.17**    **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.

### WE AGREE TO THESE TERMS:

**PLAINTIFF**

Dated: 06/13/2023

_____
CARRIE COBB

**PLAINTIFF**

Dated: _____

_____
JAMICA CRAWFORD

postings).  Plaintiffs' Counsel shall be permitted to promote the general terms of the settlement, but shall not use Medica's name (or their affiliates' names) in any promotional materials of the settlement. Nothing in this Agreement is intended to preclude Named Plaintiffs from exercising any right available under the National Labor Relations Act, but neither party to this Agreement may falsely represent the terms of this Agreement, or any fact related to the Litigation, to anyone.  Without limiting the generality of the foregoing, Named Plaintiffs and Plaintiffs' Counsel shall limit their response to any inquiry by any media representatives regarding the Litigation or the Settlement to stating that "the matter was resolved" or words to that effect.  Plaintiffs' Counsel shall be permitted to discuss the terms of the proposed settlement with Collective Members to the full extent necessary to satisfy their fiduciary obligations as proposed Collective Counsel.  It shall not be a violation of this provision for Plaintiffs' Counsel at any time to advise their clients in any fashion, and Plaintiffs' Counsel may disclose the settlement in any adequacy of counsel declarations/ related settlement court filings, so long as the disclosure is limited to information in the public record

**5.15    Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

**5.16    Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

**5.17    Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.

**WE AGREE TO THESE TERMS:**

                                               **PLAINTIFF**

Dated: _____          _____
                                               CARRIE COBB

                                               **PLAINTIFF**

Dated: 06/13/2023                 _____
                                               JAMICA CRAWFORD

**PLAINTIFF**

Dated: 06/13/2023

_____
LAVETTE JONES

**DEFENDANT**

Dated: _____

_____
JOHN NAYLOR, on behalf of
MEDICA SERVICES COMPANY,
LLC

**PLAINTIFF**

Dated: _____

_____
LAVETTE JONES

**DEFENDANT**

Dated: _6_/_14_/_23_

_____
JOHN NAYLOR, on behalf of
MEDICA SERVICES COMPANY,
LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**MINNEAPOLIS DIVISION**

| | |
|---|---|
| **CARRIE COBB, JAMICA CRAWFORD, and LAVETTE JONES,** individually, and on behalf of others similarly situated, | Case No.: 0:22-CV-02364-JRT-DLM |
| Plaintiffs, | Hon.: John R. Tunheim |
| | Hon. Mag.: Douglas L. Micko |
| vs. | |
| **MEDICA SERVICES COMPANY LLC**, a Minnesota Limited Liability Company, | |
| Defendant. | |

---

**NOTICE OF COLLECTIVE ACTION SETTLEMENT**

---

> **PLEASE READ THIS ENTIRE NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT DESCRIBED IN THIS NOTICE.**

**TO:** *All current and former CSRs who worked for Medica Services Company LLC between September 27, 2019 to May 16, 2023.*

The Collective Representatives and Collective Counsel (as defined below) believe the settlement is fair, adequate, and reasonable and in the best interest of the Settlement Collective. This Notice informs you of the settlement and its terms and your rights to participate in the settlement. This Notice also explains how you can obtain more information about the settlement.

## I.    SUMMARY OF THE LAWSUIT

Plaintiffs Carrie Cobb, Jamica Crawford, and Lavette Jones ("Named Plaintiffs") and Defendant Medica Services Company LLC ("Defendant") are parties to *Carrie Cobb, et al. v. Medica Services Company, LLC*, Case No. 0:22-cv-02364-JRT-DLM. (the "Lawsuit"), which is pending in the United States District Court for the District of Minnesota (the "Court"). Named Plaintiffs' allegations include that Defendant underpaid their hourly customer service representatives ("CSRs") because they failed to pay them for all hours worked (including but not limited to overtime hours), and in overtime workweeks, occasionally paid them at the wrong overtime rate. Named Plaintiffs allege that Defendant's practices violated the Fair Labor Standards Act (FLSA) and state wage and hours laws.

Defendant denies each and every allegation by Plaintiffs and contends that Plaintiffs and the members of the Settlement Collective were provided all compensation as required by law. The attorneys for the parties hereto have conducted substantial investigation in connection with this

Lawsuit and have researched the legal and factual issues relating to the claims and defenses that are contained in the Lawsuit.

The parties reached an agreement after several rounds of settlement negotiations and mediations before a collective-action mediator.

## II.    SETTLEMENT COLLECTIVE DEFINITION

The Lawsuit is being settled as a collective action.  In a collective action, the Named Plaintiffs, also referred to as Collective Representatives, sue on behalf of themselves and other persons with potentially similar claims.  Only those CSRs who affirmatively elect to participate in the case/settlement shall be entitled to receive any benefit from the settlement.

The collective, for settlement purposes only, under the FLSA (the "Settlement Collective"), is defined as follows:

> *All current and former CSRs who worked for Medica Services*
> *Company LLC between September 27, 2019 to May 16, 2023.*

## III.    COLLECTIVE REPRESENTATIVE AND COLLECTIVE COUNSEL

The Court has appointed the Named Plaintiffs as Collective Representatives to represent the Collective.  The Court has appointed the following attorneys to represent the Settlement Collective as Collective Counsel:

| | |
|---|---|
| Charles R. Ash, IV | Plantation, FL 33324 |
| Ash Law, PLLC | (954)WORKERS    [954-967-5377] |
| 402 W. Liberty Street | afrisch@forthepeople.com |
| Ann Arbor, MI 48103-4388 | |
| (734) 234-5583 | Oscar Rodriguez |
| cash@nationalwagelaw.com | Hooper Hathaway, P.C. |
| | 126 South Main St. |
| Andrew R. Frisch | Ann Arbor, MI 48104 |
| Morgan & Morgan, P.A. | (734) 662-4426 |
| 8151 Peters Road, Suite 4000 | orod@hooperhathaway.com |

## IV.    SETTLEMENT AMOUNT

The settlement obligates Defendant to pay up to a potential total settlement amount (referred to in the Settlement Agreement as the "Total Settlement Amount") of ONE MILLION TWO HUNDRED THOUSAND AND SEVENTY-FIVE DOLLARS ($1,275,000.00). The Total Settlement Amount includes: $820,000.00 to be paid to participating collective members ("Collective Settlement Amount"), as described below; $400,000.00 of which comprises Collective Counsel's attorney fees and up to $13,000.00 in litigation costs ("Attorney Fees and Costs"); up to $30,000.00 of which will be paid to the claims administrator ("Claims Administration Costs"), and $12,000 of which will be paid to the Collective Representatives as services awards for their efforts in securing the settlement ("Service Awards").  However, the

Collective Settlement Amount does not include employer-side wage-related taxes, which will be paid separately by Defendant.

With the exception of the employer-side wage-related taxes, under no condition will Defendant's liability for payments exceed the Total Settlement Amount. All claims submitted by members of the Settlement Collective shall be paid out of the Collective Settlement Amount. *Defendant makes no representations regarding tax consequences and the members of the Settlement Collective will be responsible for their own tax obligations*.

## V.    SETTLEMENT ADMINISTRATOR

The settlement process will be administered by RUST CONSULTING INC., an experienced collective action claims administrator.

## VI.    THE CLAIMS PROCESS

Enclosed with this Notice you will find a Claim Form and Release. If you want to receive a payment as part of this settlement, you must submit a Claim Form and Release. **If you do not properly complete and return the signed Claim Form and Release in a timely manner, you will not receive any payment under the settlement.**

**THE CLAIM FORM AND RELEASE MUST BE COMPLETED AND RETURNED TO RUST CONSULTING INC. BY MAIL, FAX, OR EMAIL AT THE ADDRESSES/NUMBER SET FORTH BELOW WITHIN 45 DAYS OF THE DATE THAT THIS NOTICE AND THE CLAIM FORM AND RELEASE WERE MAILED TO YOU. THEREFORE, FOR YOUR CLAIM TO BE CONSIDERED TIMELY, YOUR CLAIM FORM AND RELEASE MUST BE POSTMARKED OR RECEIVED NO LATER THAN 45 days after mailing date. CLAIMS POSTMARKED OR RECEIVED AFTER THAT DATE WILL BE DEEMED UNTIMELY AND YOU WILL NOT RECEIVE YOUR SETTLEMENT SHARE AND WILL NOT BE BOUND BY THE SETTLEMENT.**

Claim Forms must be mailed, faxed, or emailed to:

RUST CONSULTING INC.
[address]
[phone]
[fax]
[email]

Please follow the directions on the enclosed Claim Form and Release carefully. If you require claims administration assistance, please contact the collective administrator above. As used in this Notice and the Settlement Agreement, a member of the Settlement Collective who submits a valid, timely claim, and executes the enclosed Claim Form and Release, will opt-in to the Lawsuit and be referred to as an "Participating Plaintiff." Participation in this settlement will not affect your employment status with Medica Services Company, LLC and the law protects individuals who participate in these settlements from retaliation.

3

## VII.    RELEASE AND WAIVER

If you execute and return the enclosed Claim Form and Release, you shall be bound by the following release:

> Except for the obligations imposed by this Settlement, you shall fully, finally and forever release, remise and discharge Medica Services Company, LLC and all of its parents, divisions, affiliates (including but not limited to Dean Health Plan, Inc.), subsidiaries, predecessors, successors, employee benefit plans and plan administrators, and insurers, and their respective directors, partners, shareholders, principals, officers, members, fiduciaries, trustees, employees, attorneys, and agents (the "Released Parties") from (1) any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted, under the FLSA, any state wage and hour law or any state wage payment law, including but not limited to all claims for unpaid regular, straight time or overtime wages, or claims for miscalculation of the regular rate, as well as all associated claims for liquidated damages, punitive damages, penalties, interest, attorneys' fees and costs, taxes, equitable or injunctive relief, or any other remedies, (2) all claims for breach of contract or unjust enrichment or any other claim related to the payment of compensation, or (3) any other claims which could have been asserted in the Lawsuit for unpaid wages (together, the "Released Claims"). The Released Claims also include all claims for derivative benefits (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) all other available remedies and relief of any kind or nature whatsoever related to such claims, relating to the Participating Class Member's employment as a Customer Service Representative with Defendant during the Relevant Period.  You agree not to sue or otherwise cause to be instituted any legal or administrative proceedings, to the fullest extent permitted by law, asserting any Released Claim.

## VIII.    ATTORNEYS' FEES AND COSTS/CLAIMS ADMINISTRATION COSTS

The FLSA provides that Plaintiffs attorneys are entitled to a reasonable attorney fee in the event of a settlement. In this case, the parties negotiated Collective Counsel's attorney fees and litigation costs separately and apart from Collective Settlement Amount. Based on the Parties negotiations, Defendant has agreed to pay Collective Counsel $400,000.00 in attorney fees and up to $13,000.00 in litigation costs ("Attorney Fees and Litigation Costs").

## IX.    CLAIMS ADMINISTRATION AND MEDIATION COSTS

All costs incurred by the Parties in administering the Settlement ("Claims Administration Costs") shall be paid from the Total Settlement Amount.

## X.    CALCULATION AND TREATMENT OF SETTLEMENT PAYMENTS

As stated above, the Collective Settlement Amount available to the Settlement Collective is $820,000.00.

4

The amount available for distribution to each member of the Settlement Collective shall be calculated as follows:

The Claims Administrator will divide the Net Settlement Amount by the total number of full or partial work weeks that all CSRs were employed during the relevant period of September 27, 2019 to May 16, 2023 to determine a "Per Work Week Amount". The Claims Administrator will multiply the Per Work Week Amount by the total number of full or partial work weeks that each CSR was employed during the relevant period to arrive at an estimated "Individual Settlement Amount" for each member of the Settlement Collective.

The Individual Settlement Amounts that are actually paid to Participating Plaintiffs will be allocated as follows: 50% as wages; 50% as liquidated damages. The Claims Administrator will be responsible for issuing a form W-2 for the amount deemed wages and an IRS Form 1099 for the portions allocated to liquidated damages. Defendant and the Released Parties, individually and collectively, (a) will have no responsibility or liability whatsoever for the calculation of any Individual Settlement Amount, and (b) will have no obligation to pay the Individual Settlement Amount for any person who does not timely return an executed Claim Form and Release.

**Any member of the Settlement Collective who does not become a Participating Plaintiff shall not receive any settlement payment.** Any portion of the Collective Settlement Amount that is not claimed by a Participating Plaintiff shall be retained by Defendant.

Participating Plaintiffs will be responsible for reporting and paying any federal, state and/or local taxes, normally borne by an employee, that may be due on these payments, if any. *You should consult with your own tax advisor regarding your unique tax situation upon receipt of the funds.* Defendant shall be responsible for paying any federal, state and/or local taxes normally borne by an employer.

Payment of settlement funds will not be considered by Defendant for purposes of any employee benefit plan.

## XI.    ADDITIONAL INFORMATION

For more detailed information concerning the matters involved in the Lawsuit, please refer to the pleadings, the Orders entered in the Lawsuit, and to the other papers filed in the Lawsuit, which may be inspected at the Office of the Clerk of the U.S. District Court for the District of Minnesota during regular business hours.

Any questions concerning the matters contained in this Notice may be directed to Collective Counsel (at the address set forth above in Section III of this Notice). You may also seek the advice and counsel of your own attorney, at your own expense, if you desire.

**Do Not Call or Write the Court to Obtain Copies of Documents
Or To Ask Questions About The Settlement.**

## <u>INSTRUCTIONS REGARDING CLAIM FORM AND RELEASE</u>

YOU MUST <u>COMPLETE</u>, <u>SIGN</u>, AND <u>MAIL (OR FAX OR EMAIL)</u> THIS FORM ("CLAIM FORM") BY FIRST-CLASS U.S. MAIL, POSTAGE PREPAID (OR FACSIMILE OR EMAIL) TO RUST CONSULTING ON OR BEFORE 45 days after mailing date, ADDRESSED AS FOLLOWS, IN ORDER TO SHARE IN THE PAYMENT FROM THE SETTLEMENT.

MAIL OR FAX TO:

RUST CONSULTING
[ADDRESS]
[PHONE]
[FAX]
[EMAIL]

1.    Please complete and sign this Claim Form and Release and mail, e-mail or fax it to the addresses or facsimile number listed above in order to be eligible for payment from the Settlement.

2.    If your address has changed, please provide your new address to the claims administrator who may be reached at the number and address provided above.

## <u>CONSENT TO JOIN, CLAIM FORM AND RELEASE</u>

*Carrie Cobb, et al. v. Medica Services Company, LLC*,
Case No. 0:22-cv-02364-JRT-DLM

TO: THE CLERK OF THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD

     1.     By my signature below, I hereby consent to join the above-styled action and designate the Collective Representatives as my agent to make decisions on my behalf concerning the litigation, the settlement of the litigation, the entering of an agreement with Collective Counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that the case has been settled, that the Court has approved the settlement, and that I will receive a payment through the settlement in an amount which was negotiated by the Collective Representative and Collective Counsel.

     2.     In consideration of this settlement, I agree to accept a settlement payment constituting my pro rata share of the Collective Settlement Amount calculated based on my individual weeks worked, as reflected in Defendant's records. I understand I am responsible for the payment of any and all taxes normally borne by an employee, due as a consequence of the settlement payment I will receive.

     3.     Except for the obligations imposed by the settlement, I fully, finally and forever release, remise and discharge Medica Services Company, LLC and all of its parents, divisions, affiliates (including but not limited to Dean Health Plan, Inc.), subsidiaries, predecessors, successors, employee benefit plans and plan administrators, and insurers, and their respective directors, partners, shareholders, principals, officers, members, fiduciaries, trustees, employees, attorneys, and agents (the "Released Parties") from (1) any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted, under the FLSA, any state wage and hour law or any state wage payment law, including but not limited to all claims for unpaid regular, straight time or overtime wages, or claims for miscalculation of the regular rate, as well as all associated claims for liquidated damages, punitive damages, penalties, interest, attorneys' fees and costs, taxes, equitable or injunctive relief, or any other remedies, (2) all claims for breach of contract or unjust enrichment or any other claim related to the payment of compensation, or (3) any other claims which could have been asserted in the Lawsuit for unpaid wages (together, the "Released Claims"). The Released Claims also include all claims for derivative benefits (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) all other available remedies and relief of any kind or nature whatsoever related to such claims, relating to the Participating Class Member's employment as a Customer Service Representative with Defendant during the Relevant Period. I agree not to sue or otherwise cause to be instituted any legal or administrative proceedings, to the fullest extent permitted by law, asserting any Released Claim.

     4.     I agree to submit to the jurisdiction of the U.S. District Court for the District of Minnesota for purposes of this Lawsuit and enforcement of this settlement. I acknowledge that I

am bound by and subject to the terms of any judgment that may be entered in this Lawsuit.  I agree to supply additional information to support this proof of claim if I am asked to do so.

5.    I have submitted no other claim for unpaid wages, including overtime or minimum wage claims, against Medica Services Company, LLC.

*[Signature on following page.]*

Signature: _____

Printed Name: _____

Street Address: _____

City, State, Zip: _____

Telephone No.: _____

Email Address: _____

SSN: _____

**IF YOU WISH TO BE INCLUDED IN THE SETTLEMENT, YOU MUST COMPLETE, SIGN AND RETURN THIS FORM BY** 45 days after mailing date**.**

**SEND ALL DOCUMENTS TO**:

| |
|---|
| RUST CONSULTING<br>[ADDRESS]<br>[PHONE]<br>[FAX]<br>[EMAIL] |

**IMPORTANT:  CLAIMS POSTMARKED AFTER _____, 2023 WILL NOT BE VALID AND WILL NOT RESULT IN PAYMENT OF ANY FUNDS TO YOU**

8